IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1330C (Judge Bush)

MARC J. MILLICAN

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER

May 1, 2006

John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO 80439-6720
(303) 670-3825
Counsel for plaintiff

TABLE OF CONTENTS

PAGE

PLAINTIFF'S REPLY BRIEF....................................................................................................1

ARGUMENT

I. Transfer to the District court is proper because Millican is not seeking money, while any collateral consequences of voiding his removal from the promotion list and derogatory records will not trigger automatic and unavoidable pecuniary costs, and the district court may grant substantial declaratory relief under the APA..........................................................1

A. Millican before the BCMR and Court only demand records corrections...................1

B. Defendant's three ripeness defenses are without merit, to wit: (1) no court may remedy a deficient removal from a promotion list unless tied to money damages presently due, (2) Millican may not promoted when he was never actually appointed to LTC (3) he did not exhaust his mandatory SSB statutory remedy. ..............................4

C. A district court may go beyond the limited remedies awarded in Barnes................12

D. Additional evidence of "ongoing relationship" between Millican and Air Force......16

CONCLUSION..........................................................................................................................17

TABLE OF AUTHORITIES

CASE PAGE

Adkins v. Rumsfeld, 389 F.Supp.2d 579 (D.Del.2005)....14

Ayala v. United States, 16 Cl.Ct. 1 (1988)....2

* Barnes v. United States, 66 Fed. Cl. 497, 504 (2005)....*passim*

ben-Shalom v. Dep't of Army, 807 F.2d 982 (Fed.Cir.1986)....3

Bowen v. Massachusetts, 487 U.S. 879 (1988) ....4, 7, 16

* Calloway v. Brownlee, 366 F.Supp.2d 43 (D.D.C. 2005)....*passim*

Dehne v. United States, 970 F.2d 890 (Fed.Cir. 1992)....2

Dysart v. United States 369 F.3d 1303 (Fed.Cir. 2004)....8, 13

Eastport S.S. Corp. v. United States, 372 F.2d 1002 (Ct.Cl. 1967)....1, 4

Froudi v. United States, 22 Cl.Ct. 290 (1990)....7

Int'l Bhd. of Electrical Workers v. ICC, 832 F.2d 91 7th Cir.1987)....5

James v. Caldera, 159 F.3d 573 (Fed.Cir. 1998)....6, 7

Juffer v. Caldera, 138 F.Supp.2d 22 (2001) (D.D.C.)....10, 12

Larsen v. Hoffman, Sec'y of Army, 444 F.Supp. 245 (D.D.C.1977)....6

Lewis v. Rumsfeld, 154 F.Supp.2d 56 (D.D.C. 2001)....8

Mitchell v. United States, 930 F.2d 893 (Fed.Cir. 1991)....4, 6-7

Nation v. Dalton, 107 F.Supp.2d 37 (D.D.C. 2000)....8, 14

Norton v. Larney, 266 U.S. 511, 515-16 (1925)....4

Poole v. Rourke, 779 F.Supp 1546 (E.D. Cal. 1991)....7

Rolader v. United States 42 Fed.Cl. 782 (1999)....15

Scott v. England, 264 F.Supp.2d 5 (D.D.C. 2002)....9, 10, 12

Smith v. Sec'y of Army, 384 F.3d 1288 (Fed.Cir. 2004)....3,4

Spehr v. United States, 51 Fed.Cl. 69 (2001)....1

Vietnam Veterans of America v. Sec'y of Navy, 843 F.2d 528 (D.C.Cir. 1988)....5-6

Wagner v. United States, 365 F.3d 1358 (Fed.Cir. 2004)....10

Watkins v, U.S. Army, 875 F.2d 711 (9th Cir.1989)....15

CASE PAGE

Wolf v. Marsh, 846 F.2d 782,(D.C.Cir. 1988)......3, 4

STATUTES AND REGULATION

5 U.S.C. § 702......1

10 U.S.C. § 624......13

10 U.S.C. § 629......8

10 U.S.C. § 1558......11, 12

10 U.S.C. § 12771......3

10 U.S.C. § 17773......3

10 U.S.C. § 14502......9-12

AFI 36-2501, *Officer Promotions* (2004)......11

GLOSSARY

| | |
|---|---|
| AFI | Air Force Instruction |
| NJP | Non-judicial punishment imposed under 10 U.S.C. § 815 (U.C.M.J.) |
| SSB | Special Selection Board for promotion |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARC J. MILLICAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | No. 05-1330 C (LJB) |
| | ) | |
| THE UNITED STATE | ) | |
| | ) | |
| Defendant, | ) | |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO THE MOTION TO TRANSFER

Plaintiff submits his reply brief to the defendant's opposition to Millican's motion to transfer this case under 28 U.S.C. § 1361. Millican moves separately to amend his complaint.

Millican is moving to transfer this case as within the jurisdiction of the U.S. District Court (D.D.C.) under the APA, 5 U.S.C. § 702. To invoke jurisdiction he need not prove certain success on the merits and obtain all remedies, but only that his claims are "not frivolous, but arguable." Cf. Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1008 (Ct.Cl. 1967); Spehr v. United States, 51 Fed.Cl. 69, 81 (2001)(service-member's success on the merits irrelevant to jurisdiction issue). A court may consider all relevant evidence, construing plaintiff's complaint and pleadings favorably. A court should not grant a motion to dismiss "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." Hoskins v. United States, 40 Fed.Cl. 259, 264-65 (1998), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**I. Transfer to the District court is proper because Millican is not seeking money, while any collateral consequences of voiding his removal from the promotion list and derogatory records will not trigger automatic and unavoidable pecuniary costs, and the district court may grant substantial declaratory relief under the APA.**

A. Millican before the BCMR and Court only demand records corrections.

Millican's original complaint asked up-front to set aside a BCMR decision wherein he had asked to only correct adverse records:

> This is a claim to set aside the [AFBCMR decision]. . .that denied Millican's pay and records corrections requests. Major Millican sought to void his April 2002 removal from the FY 2000 [LTC] Promotion List, his involuntary transfer. . . to the Retired Reserve. . . and removal of related derogatory records.

Compl. at 1. His reference to the agency denying his "*pay* and records corrections" was to the discretion of these Boards to traditionally offer reservists missed drill pay, and not for retired pay.[1] Both the BCMR decision and Millican's board legal brief did not ask for retired pay but a transfer to the retired list at the rank of LTC. AR at 2, 11 (requested "back pay for missed UTAs").[2] His prayer for relief also asked for remand to the BCMR whether to award him back drill pay. Compl. 13. Millican before this Court only asked for review of these same BCMR claims. Compl. ¶ 42 ("Plaintiff now seeks judicial review of the AFBCMR's decision that denied his claims").

Millican's counsel in his prayer for relief did not expressly demand entitlement to payment of retired pay but repeated the BCMR claim to "correct Major Millican's transfer to the Retired Reserve, ...to reflect the rank of [LTC] with an increase in pay and other benefits at that rank." Compl. 42. The latter reference "increase in pay and other benefits *at that rank*" is the collateral consequence that may flow upon a later application process in due course, after meeting the age condition, and an agency discretionary award. It is not an unequivocal demand for the Court to compel payment of money. Millican elsewhere in his complaint did not cite any statute nor argue that he is seeking to compel the Air Force to bypass or override the retired pay process and grant him retired pay in advance or a "future right" to such pay. Def. Opp. 5-6; 9 ("Millican may wish it otherwise. . . that his retired pay be calculated and paid").

The reference to transferring Millican to the retired list as a LTC along with its attendant privileges, is no different than a service-member seeking reinstatement along with whatever is "just and proper." Cf. Crane v. United States, 41 Fed.Cl. 338, 340 (1998) (transfer motion from COFC

[1] See e.g Dehne v. United States, 970 F.2d 890, 894 (Fed.Cir. 1992)(although not obligated under § 1552, BCMR may award back pay for reserve duty and offered here); Ayala v. United States, 16 Cl.Ct. 1, 4 (1988)(BCMR in its discretion awarded reservist back pay for missed drills).

[2] Unit Training Assembly.

proper where request for both reinstatement and "such other relief the Court deems proper and just" is mere surplusage to grant whatever he would be entitled to anyway); see 10 U.S.C. §§ 12771, 17773, (reserve officer transferred to the retired list in highest grade served is not entitled to increase in retired pay); § 12731 (reservists entitled to pay after meeting conditions and approved); Ben-Shalom v. Dep't of Army, 807 F.2d 982, 983, 987 (Fed.Cir.1986)(although while reservist's lawsuit for reinstatement was pending she sought a money settlement, Tucker Act is not invoked by implication when complaint did not seek money nor was any money-mandating statute at issue).[3]

To the extent the complaint's reference to this collateral process is ambiguous, Millican amends his prayer for relief asking the court to "correct Major Millican's transfer to the Retired Reserve to reflect the rank of Lieutenant Colonel." Amend. Compl. 13. This cannot disguise a money claim "because there was no monetary claim to waive." Wolf v. Marsh, 846 F.2d 782, 784 (D.C.Cir. 1988); cited by Crane, at 341 (would not infer claim for "reinstatement" must lead to back pay). Moreover, there was no money claim to waive because Millican was not legally or factually entitled to demand money. 10 U.S.C. §§ 12771, 17773. Defendant readily concedes that no money entitlement will result even assuming *arguendo* a court voids Millican's removal from the LTC list and promotes him. Def. Opp. 9 ("no court has the authority to order a [pay] remedy because no reviewable action yet exists"). Amendment cannot alter the substance of Mr. Millican's allegations but clarifies the facts as to what existing 'final agency actions' he can challenge. Amendment trims the allegations to the bare essence of the claim.

Because no money-mandating statute is implicated, and no back or future pay would be triggered, Tucker Act jurisdiction is not implicated. Smith v. Sec'y of Army, 384 F.3d 1288, 1292-94, n. 2 (Fed.Cir. 2004)(refusing transfer of claim to APA because complaint for promotion and back pay relies on money-mandating statute; claim's amendment did not eliminate back pay

[3] Defendant had argued that "the complaint implicitly sought back pay as part of the remedy for her illegal discharge." Id 987.

request).[4] The Smith court extended the analysis of Bowen in Mitchell v. United States, 930 F.2d 893 (Fed.Cir. 1991) to find that records corrections cases involving "back pay" are Tucker Act and not APA claims.[5] Mitchell at 896-97 ("Mitchell's claims include a request for back pay which [Bowen] places within the Claims Court's Tucker Act jurisdiction").

Under this analysis, Millican may then seek a transfer for a remedy in the district court under APA principles. In Eastport, 372 F.2d at 1008, the court held that "this court is not concerned with any and all pecuniary claims again the government simply because they rely upon as aspect, federal, constitutional, statutory or regulatory law." Without a statute mandating compensation, "this court cannot grant relief although some separate general principle. . . might lead to a remedy in another forum under some special relief provision." Id 1008-09.

It is well established that courts should liberally grant a motion amending the complaint to cure jurisdictional defects that conform the complaint to the facts of record. Smith, at n. 4 (allowed amendment once after motion to dismiss for lack of jurisdiction); Wolfe 846 F.2d at n. 4 citing Norton v. Larney, 266 U.S. 511, 515-16 (1925)(necessary jurisdictional facts not appearing in original complaint may be supplied by amendment). As argued below, Millican has exhausted his SSB remedy, and a district court can grant a number of substantial remedies to Millican. Defendant will not suffer prejudice with the motion to amend because it provides an opportunity to reply.

**B. Defendant's three ripeness defenses without merit (1) no court may remedy a deficient removal from a promotion list unless tied to money damages presently due, (2) Millican may not promoted when he was never actually appointed to LTC, (3) he did not exhaust his mandatory SSB statutory remedy.**

Millican will address these contentions *seriatim.* Each of defendant's arguments for dismissal for lack of ripeness, are without merit.

---

[4] The court remanded to district court solely to determine whether the active duty money-mandating statute would apply based upon government response that Smith's retirement was voluntary.

[5] Bowen v. Massachusetts, 487 U.S. 879, 895 (1988).

(1). Defendant throws up ripeness as a pretext why transferring this case is improper and wholesale dismissal is proper. Defendant implies that a court-ordered voidance of Millican's name removal from the LTC promotion list is not severable from the collateral pay process he will be motivated to apply for in the distant future.[6] Defendant fails to recognize that the reserve pay statutes are *prospective* and *discretionary* while active duty pay statutes that both *retrospective* and *money-mandating*. This general difference accordingly subjects reservists and active duty member claims to varied jurisdictional rules. Defendant attempts to lump reservists— who are limited to records corrections without any money-mandating statutes— into the same category as active duty members. Case law bears this out, infra. But facing this dilemma, defendant throws out a red herring: reservists must wait to challenge involuntary retirements, separations or demotions, until they ripen into active duty-type claims where back pay is due. This leaves defendant in the untenable position of arguing a lack of Tucker Act jurisdiction while saying Millican "hastily constructs a detour to avoid Tucker Act jurisdiction." Def. Op. 3.

First, it is "clear that a claim is not for money merely because its success [in reinstating Millican's to the retired list as a LTC] "may lead to pecuniary costs to the government or benefits." Crane at 341, citing Vietnam Veterans of America v. Sec'y of Navy, 843 F.2d 528, 534 (D.C.Cir. 1988). But when the defendant here asks "the court to infer that [Millican] will eventually seek money damages, defendant is asking the court to embark on a perilous journey." Crane 341; Vietnam Veterans, 534 (court will not complicate resolution of jurisdictional issue by going outside the record into whether injunctive relief will result in "direct, automatic, and unavoidable" payment of money). To assert that Millican's challenge to his LTC removal is not ripe, defendant asks every court to couple it with inquiries into a collateral proceeding that in the distant future 'may' result in increased pension. Vietnam Veterans, at 535 ("The chief and often only virtue of a jurisdictional rule is certainty." citing Int'l Bhd. of Electrical Workers v. ICC, 832 F.2d 91, 93 (7th Cir.1987).

Millican's challenge is analogous to that in Calloway v. Brownlee, 366 F.Supp.2d 43,50-53

[6] Def. Opp. 7-9 (includes the promotion list removal issue under heading III "claim is not ripe in any court").

(D.D.C. 2005). There, the Army-defendant asserted plaintiff's complaint to remove adverse performance evaluations was in essence to obtain a higher retirement pension upon remand to apply for promotion reconsideration.[7] Defendant-Brownlee did not dispute that any monetary damages "would flow not from the case before the this Court, but rather from later proceedings before various Army boards of review." Id 52 ("the argument that some subsequent monetary benefit by a plaintiff would divest this Court of jurisdiction has been rejected" citing Vietnam Veterans). The court in Calloway stated that his case was "even clearer than the situation presented in Vietnam Veterans where money damages would flow directly from" any court action. Id 53; Larsen v. Hoffman, Sec'y of Army, 444 F.Supp. 245, 250, 251 (D.D.C.1977)("no need to speculate concerning future claim for money" since terminating their discharges *ab initio* would "immediately and necessarily entitle them to money relief" under Tucker Act).

Lastly, the Calloway court did not raise the ripeness defense to bar that soldier's request to void two adverse evaluations simply because a future promotion reconsideration board had yet to determine if his corrected record would result in a higher pension. Because removal of Millican's name from the LTC promotion list is a final agency action subject to review under the APA, it is both severable and immune from any ripeness defense to forcing him to wait until age 60 and is awarded a pension.

Defendant references two cases where plaintiffs hinted or omitted money claims in their complaints and solely sought equitable relief. But those cases stand for the proposition that the government may imply a Tucker Act money claim where the equitable relief would trigger automatic and unavoidable back pay, but not where it was discretionary. Def. Opp. 5-6, citing James v. Caldera, 159 F.3d 573 (Fed.Cir. 1998) (court split claims so records corrections transferred to district court while request to extend enlistment remanded to determine whether back pay would arise as a "firm right" or "discretionary so as to defeat jurisdiction"); Mitchell v. United

---

[7] Calloway before the BCMR had asked for promotion reconsideration if the adverse evaluations were removed.

States, 930 F.2d 893 (Fed.Cir. 1991)(equitable claim to correct records to qualify reservist for active duty retirement, could not disguise claim to obtain automatic award of back pay).

The defendant *sub judice* does not dispute that any monetary damages could not be triggered from granting the relief he seeks, but rather from later pension proceeding at age 60, and even then only discretionary. This is akin to Calloway where removing his adverse records will give him the opportunity to apply in the future for increased pension after successful promotion reconsideration. See also Poole v. Rourke, 779 F.Supp 1546, 1556-57 (E.D. Cal. 1991) (where airman's original equitable request to enjoin his pending discharge was amended to include back pay upon discharge, claim was not for money damages even though equitable relief "may later be the basis for a money judgment," citing Bowen v. Massachusetts, 487 U.S. 879 (1988)). As stated in Calloway, Millican's case too "is even clearer than the situation presented" in James, Mitchell and Poole, where back pay awards were inevitable and automatic.

No doubts remain after amending the complaint and the above analysis, that this court can transfer all the claims as records corrections to the district court. However, if defendant harbors any lingering concerns whether Millican is demanding a guaranteed retired pension before age 60, the Court can sever any money claim not ripe for review, transferring the balance to the district court. Poole at 1556 (noting claims courts decisions agree that district courts have jurisdiction to provide equitable relief that does not constitute damages even though it is monetary in nature, citing Froudi v. United States, 22 Cl.Ct. 290, 296-97, n. 11 (1990)(equitable claims severed and transferred to district court where just compensation claims from DEA's property forfeiture was not ripe since collateral district court proceeding had not made declaration of unlawful taking)).

(2). Alternatively, defendant may be arguing that the severable claim to promote Millican to LTC is not ripe for judicial remedy under the APA because he was not actually appointed as a LTC with a later revocation. This is wrong. Remedial actions in this case can take several forms, with all declaratory actions not mandating pay: voiding the list removal, reinstating

Millican to the LTC list, and even promoting Millican retroactive to his original effective date in June 2000.

It is noteworthy that once defendant suggests declaratory remedies are severable from a money claim, albeit not ripe, this implies that jurisdiction is appropriate in the district courts under the APA. This shifts the focus of this transfer motion to questions of justiciability and relevance of district court precedent. As set forth below, all of these remedies are justiciable by relying on case law, statutory and regulatory standards.

First, defendant is mistaken that courts are precluded from these awarding these remedies. Barnes v. United States, 66 Fed. Cl. 497, 504 (2005)(Dysart does not nullify remedying "deficient removal from a promotion list" and removal voided); Nation v. Dalton, 107 F.Supp.2d 37, 46 (D.D.C. 2000)(list removal is reviewable under APA).

Secondly, a challenge to removing Mr. Millican from the LTC promotion became ripe for APA review when the President Bush in 2002 approved the Secretary's recommendation. See Lewis v. Rumsfeld, 154 F.Supp.2d 56, 59-60 (D.D.C. 2001)(claim not ripe when service only delayed promotion without removal). The severable money-compensable injury is of course not a final agency action. But the finality of the derogatory records placed in files, the removal from the promotion list, and transfer to the retired status, are not in suspended animation pending Millican reaching age 60. That bell has been rung. Nor has defendant disputed that any of these adverse actions are final for purposes of APA review. Millican seeks correction of the these adverse records corrections and their consequential transfer into the inactive retired reserve. He is not seeking an advance on retired pay, nor to accelerate the retired pay application process, nor an order compelling future payment.

In Barnes, the court invalidated a Naval officer's removal from the promotion list and voided its conversion as his first promotion non-selection. 10 U.S.C. § 629(c)(2)(if officer is non-selected for promotion by the next board after a prior promotion list removal, then officer will be

considered to have twice failed of selection for promotion).[8] Although Barnes had not requested removal of his non-selections nor an SSB, the court voided his second promotion passover after finding the statutory SSB remedy did not apply. 10 U.S.C. §§ 628(h)(must exhaust this administrative harmless error remedy).[9] It then voided the discharge caused by the two passover rule. The court reinstated him to active duty and *sua sponte* order a judicially-crafted special promotion board remedy to reconsider the second passover:

> Because his name was removed from the promotion list, and he was not recommended for promotion by the next promotion board, the Navy proceeded on the basis that plaintiff was considered twice failed of selection. However, as a matter of fact, Lt. Barnes was **selected** for promotion by the 1998 Board, and the selection received Senate confirmation. Only if Lt. Barnes' name was then properly removed from the promotion list, can the subsequent promotion board's failure to select him for promotion be deemed a "second" nonselection.
>
> * * *
>
> Failure to comply with regulations concerning his name removal from the promotion list served to deprive the removal of its validity, and thus prevent removal from serving as a failure of selection when in fact he was selected for promotion. Absent a valid "first" promotion deemed a non-selection, there was no "second" failure of selection and the requirements [to discharge after two passovers] have not been satisfied.

Id 499, 505; and n. 8 (because removal was invalid, the military may not convert an actual board selection into a deemed first non-selection).

For these same reasons in Barnes, defendant's statutory 'prior exhaustion' argument is without merit. Defendant contends that no court has jurisdiction to set aside Millican's promotion non-selections because he had never asked for a SSB before the BCMR. Def. Opp. 9-10 citing 10 U.S.C. § 14502(g), citing Scott v. England, 264 F.Supp.2d 5 (D.D.C. 2002)(reserve officer challenging his failure to be selected by a promotion board, had not filed BCMR appeal to exhausted SSB remedy). First, the exhaustion remedy applies to officers who have failed to be selected for promotion "by a selection board." As quoted above, Millican was similarly selected for promotion by a board in 1999. Because he then presents non-frivolous procedural arguments to

---

[8] The reserve counterpart is 10 U.S.C. § 14501(b)(3)(A)(converts list removal to non-selection upon next board's non-selection).

[9] The reserve counterpart is 10 U.S.C. § 14502(g).

invalidate the removal from a list (of a promotion board that selected him), removal cannot be converted into a non-selection for purposes of § 14502. Barnes n. 8. And only if Millican's name was properly removed from the promotion list can his "subsequent promotion board's failure to select him for promotion be deemed a second non-selection." Barnes 499.

Next, § 14502(g), like its regular military counterpart § 628(h), were enacted in 2001 to deprive courts of *sua sponte* applying a harmless error test to "board non-selections" as to whether reinstatement and back pay was appropriate. It instead requires exhaustion of the administrative SSB as the harmless error remedy. Scott at 8 (legislative history). But as Barnes points out, the harmless error doctrine was inapplicable because a list removal found invalid deprives conversion into any equivalent board non-selections. The court then was free to determine if the harmless error doctrine was judicially appropriate. It found the doctrine inapplicable for "illegally composed board errors." Id 502-03, 507 citing Wagner v. United States, 365 F.3d 1358 (Fed.Cir. 2004)(board convening to release reservist with over 18 years service, could not convene absent the required prior Secretarial exception). For this reason, the doctrine cannot apply to Millican's second non-selection because absent a first valid removal, the second board was illegally convened— let alone produce any lawful decision.

Millican's complaint requests to set aside his second non-selection for LTC incidental to finding his list removal invalid. Because under Barnes § 14502 would be arguably inapplicable, this request is reviewable for a district court. More importantly, defendant's citation to the Scott line of cases— APA cases in the district court (D.D.C)— is a tactic admission that reservists not on active duty may challenge their failure to be promoted in that forum, notwithstanding their un-excused failures to exhaust his SSB remedy. Scott at 8 (court dismissed "without prejudice" until administrative exhaustion completed). The other case is Juffer v. Caldera, 138 F.Supp.2d 22 (2001)

(D.D.C.) (reserve soldier's challenge to denial of promotion and early transfer to retired list dismissed under § 14052(g) because administrative SSB remedy pending).[10]

> (3). In the event a district court voids the cause for the list removal but does not recognize promotion under Air Force regulations must occur, the court may order the SSB remedy because it was raised and rejected by the AFBCMR.

Assuming *arguendo* that a district court voids the derogatory two records that resulted in the removal action but does mandate his promotion occur by regulation, then the court may remand for a SSB to reconsider the promotion. Defendant misstates the SSB exhaustion rule under § 14502((g). The statute broadly states only forbids courts from hearing a claim that is "based in any way" on the failure of a board non-selection unless "it was rejected [by the BCMR] *without consideration* by a special selection board." Id (g)(1)(A)[italics added]; compare same § 1558(f)(no jurisdiction unless Secretary has denied the convening of a SSB for consideration).

The BCMR in effect rejected Millican's promotion claim without consideration by a SSB. The SSB issue was raised by the Air Force before the BCMR in the alternative. The request was rejected by the Board after deciding not to correct the derogatory records. In response to Millican's request for promotion based upon the illegal AVIP, an advisory opinion from the Air Force to the BCMR requested instead the board convene a SSB:

> If the Board determines an error or injustice requiring correction of [Millican's] records, we urge board not grant his request for direct promotion. The law mandates promotions nominations be preceded by recommendations from selection boards. . . .or from special selection boards. . . .If the Board deems remedial action necessary, we recommend Millican's] record by referred to a SSB for its determination whether he should be recommended for promotion.

AR 134. (Adv.Op., January 14, 2004). In others words, the Air Force interpreted voidance of the cause of the removal action as leaving an incomplete promotion action, albeit still delayed. This

[10] Also significant is Scott and Juffer did not otherwise raise any final agency actions that would be independently reviewable, such as voiding or correcting derogatory records in his files. They simply argued that the Army's promotion board process itself was discriminatory.

apparently presaged the Barnes remedy in 2005.[11] Although as Millican argued supra, Barnes is distinguishable because that officer did nor challenge the NJP causing his removal, nor did the court void that derogatory record. Lastly, Air Force regulations provide the mandate to promote when the reason for delay no longer exists. In any event, when the BCMR *sub judice* denied the records corrections it was rejecting the SSB consideration.

This broad reading of the SSB exhaustion statutes is consistent with Scott and Juffer. In the first case, Scott brought a lawsuit directly after is non-selection and completely bypassing the BCMR. The court only required Scott go before the BCMR and simply assert that his non-selection was in error or an injustice:

> The governing rule under Title 10. . . is that a naval officer who seeks to challenge the Navy's decision not to select him for a promotion first must challenge the non-selection by petitioning the defendant through the Board and asserting that the non-selection constituted or error or injustice. §§ 1558, 114502.

Scott 8-9. And because in Juffer he had filed a lawsuits while the BCMR decision was pending, there was no rejection of a SSB remedy.

In sum, because there is no impediment for Millican to bring his promotion challenge in the district court, that settles the question whether transfer is appropriate.

### C. A district court may go beyond the limited remedies awarded in Barnes, while Millican raises procedural defects in the removal process

The Barnes remedy was limited to voiding his list removal and discharge but did not promote the officer. Nonetheless, these remedies were substantial. Although these are judicial remedies Millican will benefit from, the distinguishable facts in Barnes did not mandate promotion under Navy regulation.

First, Barnes did not challenge that the disciplinary action causing the list removal, a non-judicial punishment, was either illegal, unsupported by the facts, or otherwise improper. Rather, Barnes argued that before the allowable period of delay had expired, the cause to disqualify him

---

[11] See AFI 36-2501, *Officer Promotions* (2004)( ¶ 6.2 ("The AFBCMR of federal court can direct an officer for consideration by a SSB").

was not formally renewed or clarified after a later separation board voted to retain him. Earlier proceeding 57 Fed.Cl. 204, 213 (2003).[12]

Consistent with the Dysart precedent, the Barnes court vacated its prior promotion order and granted the alternative remedy above.[13] The Barnes court's promotion order was vacated because the statute only permitted retention of the officer on the promotion list without mandating actual appointment and no Navy regulation otherwise required his promotion. 10 U.S.C. § 624(d)(1)(D) (if investigation does not result in separation from active duty "the officer shall be retained on the promotion list"); § 624(a)(2)(except as in subsection (d), officers on the list shall be promoted when additional officers in that grade "are needed"). Barnes 66 Fed.Cl. at 498-99 (statute providing that officers shall be promoted "upon vacancy" does not mandate promotion). Unlike the special situation in Barnes, Air Force regulation provides an supplemental promotion mandate:

> if the reason for delay no longer exists, promote the officer to the next higher grade with the same DOR as if the delay did not occur.

AFI 36-2504 ¶ 7.5.2.2.[14] This procedural due process flows from the reserve delay statute. 10 U.S.C. § 14311(b)(if the Secretary later determines the officer is qualified after a delay for cause, the officer "shall be retained on the promotion list"); § 14308(b)(2)(officers on a promotion list "shall be promoted in accordance with regulations prescribed by the Secretary"). Secondly,

---

[12] Shortly after Barnes' promotion recommendation was forwarded but before its effective date, he received an ambiguous notice delaying his promotion. The several reasons were that the NJP "may" be disqualifying but a related separation proceeding was pending. Despite the NJP, the separation board retained Barnes but recommended his promotion removal. The Secretary extended the delay and removed him from the promotion list, presumedly because the NJP was still disqualifying (or was acting on the separation boards' recommendation). 10 U.S.C. § 624(d)(1)(delay during investigations) or (d)(2)( delay for "cause" to disqualify). The court found that the earlier notice was solely a delay for a pending investigation and not also raising in tandem the NJP as a separate "cause" delay. Id § 624(d)((1)((if not separated after an investigation or proceeding, then retain the officer on promotion list "unless an action to delay for cause has been taken").

[13] Dysart v. United States 369 F.3d 1303 (Fed.Cir. 2004)(absent regulation or statute mandating promotion after unlawful delay, Secretary retains discretion to promote).

[14] Excerpt contained in Plaintiff's Reply Exhibit A.

procedural due process flows from ¶ 7.2 because it prohibits promotion propriety actions, including a delay pending removal, unless there is "cause to believe the officer is not . . . morally or professionally qualified to perform the duties of the higher grade."

Also unlike in Barnes, Millican seeks a declaration that the reason for his promotion delay was *void ab initio* because the predicate "cause" of disciplinary actions were unlawful. These were the reprimand and adverse performance report. Contained in these two records were the basis to disqualify Millican under § 14311(b): allegations of disobedience and disloyalty stemming from his defying military orders issued pursuant to an Anthrax immunization program in 1999 [AVIP].[15] Millican fully discusses in his prior pleading and complaint the impact of Doe v. Rumsfeld. It shows the illegality in 1999 of compelling anthrax shots without the required FDA order proving they were safe and effective. Until the FDA declared the drug safe in 2004, the immunizations were investigational and required informed, and not misinformed, consent. The legal quagmire of how to resolve the discipline against those who were punished for refusing the shots, is a dilemma of the military's own making.

Defendant in its opposition is silent about the AVIP arguments under Doe. Millican need only show non-frivolous arguments that he had a right or duty to defy illegal orders, with any related public speech on the matter constitutionally protected. This has been successfully argued elsewhere. Adkins v. Rumsfeld, 389 F.Supp.2d 579, 583 (D.Del.2005) (airman had arguable First Amendment right to speak out against AVIP and was free from reprisal of a reprimand, citing Doe v. Rumsfeld (without FDA Final Order declaring as safe and effective, only conclusion was it was impermissible investigational drug).

Accepting as true the allegations that the disciplinary actions in 1999 were unlawful, or reprisals for protected public speech about illegal orders, then no cause existed to disqualify Millican and initiate a promotion propriety action. Nation v. Dalton, 107 F.Supp.2d 37, 46 (D.D.C.

---

[15] AR at 59 (President removed Millican from the list because "he refused to undergo an anthrax immunization. . . and advised members. . .to refuse their inoculations. . . [he] received a letter of reprimand and an adverse performance report").

2000) (court's review of removal action established plaintiff's misconduct "adequately supported the decision removing her from the 1995 promotion list because it bore on the quality of her performance as an officer" and thus not arbitrary under the APA).

Absent cause to disqualify raises a second problem for the Air Force because. It interprets provisions of its promotion regulation governing delays as allowing "indefinite delays" in removal actions. Rolader v. United States 42 Fed.Cl. 782, 785-86 (1999)(regulatory provision for delays in removal actions operate as "unlimited source of postponement of a promotion" beyond 18 month limit); AR 67-68 ¶ 4 (no time limits on delays pending removals); AR 88 ¶ 4b (no time limit). If a court invalidates the promotion list removal as lacking cause, then § 14311(b) requires returning him to the list, albeit still delayed. It follows that with the reason to delay no longer existing, the Secretary must promote Millican "with the same DOR as if the delay did not occur." AFI 36-2504 ¶ 7.5.2.2.[16]

Millican's promotion was a delay "for cause" alleging he was not professionally qualified under § 14311(b), rather than any pending investigation. AR 86 ¶ 4 ((legal review stating basis was cause not qualified); AR 88-89 ¶ 3b (BCMR Advisory Opinion stating basis was cause not qualified); see AFI 36-2504 ¶ 7.2 (commanders initiate promotion propriety actions where there is cause to believe the officer is not qualified to perform at the higher grade), ¶ 7.5 (a delay occurs if an action begins to remove an officer from a promotion list); ¶ 7.8.4 (recommendation to remove automatically delays the promotion); AR 56 at ¶¶ 2-33 Millican commander's *Intent to Remove From Promotion List,* March 15, 2000 ("Such actions are inconsistent with the standard of conduct and professionalism * * * as a result your promotion is delayed [until Secretary makes a decision]").

---

[16] In the alternative, Millican in his complaint alleged that the removal action was unlawful because it occurred after the expiration of 18-month permissible limit on promotion delays. Under that allegation, if a court invalidates the "cause" to disqualify *ab initito*, then the Barnes remedy applies. See Original and Amended Complaint ¶¶ 30-31 (removal occurred 22 months after Millican would have been promoted and the law does not permit any subordinate official to impose an indefinite delays).

In sum, Millican raises multiple non-frivolous APA claims that if accepted as true, would allow a district court to grant substantial declaratory relief. Even if such court voids the derogatory records but cannot compel the Air Force to enforce its regulatory mandate to promote Millican, it can take actions similar to Barnes: reinstate Millican to the LTC promotion list, void his second promotion non-selection, and reinstate him to active reserve status with a remand to the BCMR to reconsider whether to award the appointment (as he so argued before the agency). Moreover, because the derogatory records would be expunged, Millican could further ask the court to prohibit or bar the Air Force on remand from denying his promotion on that prior disqualification. compare, Watkins v, U.S. Army, 875 F.2d 699, 711 (9th Cir.1989) (although reenlistment was not soldier's entitlement and discretionary, Army may not "refuse to reenlist Watkins on the basis of " a disqualification the Army had waived), cert denied, 498 U.S. 957 (1990).

D. Additional evidence showing "ongoing relationship" between Millican and Air Force.

In Millican's prior pleading he mentioned that complicating jurisdiction by the COFC, Bowen raised the additional concern whether there existed an ongoing relationship between the parties over the amount of prospective entitlements. Id 905. In additional to the prior cited evidence of the ongoing relationship, Millican points to an Air Force policy letter he received prior to transfer to the Retired Reserve:

> 3. If you elect to resign rather than be transferred to the Retired Reserve, you will have no military status. You will be classified as a "former member." * * *
>
> 4. It is to your benefit to be transferred to the Retired Reserve instead of being discharged. You maintain your military status, and as a member of th Retired Reserve you remain a viable asset in the event of a Presidential recall. * * *

AR 60 ¶¶ 3-4 (October 2, 2002 Air Force letter to MAJ Millican)

CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court grant leave to amend the complaint, find that jurisdiction is lacking, and transfer the case to the United States District Court (D.C).

May 1, 2006 Respectfully submitted,

a/s, John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO. 80439-6720
(303) 670-3825