IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARC J. MILLICAN<br><br>Plaintiff,<br><br>v.<br><br><br>THE UNITED STATE<br><br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br><br>No. 05-1330 C (LJB) |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiff submits his reply to defendant's opposition to Millican's motion for leave to amend his complaint. Defendant offers nothing new. Instead of debating head-on the case law and substantive issues in the motions to amend, to transfer, and of jurisdiction and agency finality, defendant obfuscates.

Defendant blows smoke by contending it is always futile for plaintiffs to amend complaints that deprive a court of jurisdiction. But the real focus before the Court at this juncture is the motion to dismiss, Millican's responsive motion to transfer, and applicable legal standard of review. As previously set forth, it is improper to dismiss "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of *his claim* that would entitled him to relief." Hoskins v. United States, 40 Fed.Cl. 259, 264-65 (1998) [emphasis added]. Millican's responsive claim is the motion to transfer supported by a motion amending the complaint. This includes a determination whether the district courts provide the only adequate jurisdiction under the APA, 5 U.S.C. § 702, to correct final agency records not involving automatic payment of money presently due under a mandating statute. And the "set of facts" are in the form of Millican's amended complaint, and other pleadings, to permit the Court to determine if transfer is appropriate. These facts show that defendant insists on hanging jurisdiction— not on any final agency action tethered to the jurisdictional certainty of a "firm right" to money— but on defendant's speculative guesses on multiple future events whose outcomes are wholly uncertain. James v. Caldera, 159 F.3d 573 (Fed.Cir. 1998) (transfer of claim

appropriate where pay does not arise as a "firm right" but remanded to determine whether upon reinstatement back pay is discretionary). Finally, Millican's case is even clear than that in Bowen where the equitable relief would guarantee future entitlement to a money claim.[1]

Having discarded jurisdictional principles, defendant invites the courts into a quagmire obliterating the careful distinctions drawn between the APA and Tucker Act. Defendant offers no bright-line test distinguishing the garden variety APA military records-correction cases. These are routinely motivated to eliminate the potential for future adverse career consequences affecting pay, such as promotions, separation, or early retirement. For most military records correction cases, the hope in removing negative official records is the opportunity to remain eligible for career-track advancement resulting in pay. Defendant concedes as much. Def.Opp.Mtn. for Lve at 3 ("Millican has set his ultimate aim on. . .the opportunity to for retired pay."); Def.Opp.Mtn. to Transfer at 4 ("true nature of Millican's claim is still for the opportunity for increased pay").

Defendant further ignores the bright-line test in the reserve retirement statute itself. At 20 years reservists are not retired for pay purposes but simply reassigned or transferred 'on paper' into inactive status. 10 U.S.C. § 12735(a)(transferred to "inactive status" until age 60); § 12731(a) (transferred reservists not entitled to retired pay). If a court reinstates Millican to the LTC list, voids the promotion list removal, or a SSB on remand successfully selects, these still result in only a paper transaction in a non-pay status, while any future outcome still uncertain. Moreover, the BCMR did not envision Millican's claim as demanding a promise to pay him now or in the future.

Defendant's motion to dismiss rests on its absurd belief that Millican's original complaint was a demand for the Air Force promise now to pay him in the future as a retired LTC, or to seek immediate retired annuities before reaching age 60. As noted, Bowen still disposes of this case under the APA. But as the defendant suggest, such a claim would be under a super-retirement standard that ignores the two part "discretionary and age-60 retirement rule", as it were. Defendant's opposition pleading to the amended complaint does not dispute that Millican is simply conforming his complaint

---

[1] Bowen v. Massachusetts 487 U.S. 879 (1988).

to seek the records corrections available to every officer under the facts and law. Nor does defendant dispute that relief is consistent with what he sought before the BCMR— that is, a "claim to set aside the [BCMR] decision that denied his records corrections requests. . . " Amd.Compl. 1 [emphasis added].

But to the extent that the original complaint suggests a demand for a firm promise to pay now or for advance payments, the amended complaint can serve as a voluntary dismissal or abandonment of that claim. Because this shows Millican never had an intent to ask this Court for anything different before the BCMR, it serves the interests of justice to allow both amendment and transfer. It eliminates the need for the Court to first address whether to "sever" a money demand before transferring the equitable claims. Cf Froudi v. United States, 22 Cl.Ct. 290, 296-97 (1990).

Secondly, amendment cannot be "a ruse" as defendant retorts, because Millican has resolved any ambiguity in the claim. Def. Opp to Leave to Amend at 3. Millican shows he never did, nor does not now, seek money. But defendant attaches significance that the amended complaint contains no "conspicuous" waiver of damages exceeding $10,000. Id at 2. But an express waiver of damages is a worn-out trap used to implicate the existence of damages when none existed. Ostrow v. Sec'y of Air Force, 48 F.3d 562 (D.C.Cir.1995)[Table](in Wolf "we declined to infer a money claim from a waiver concluding it 'ambiguous at best' where there is no money claim to waiver.").[2] Millican does not cite Ostrow as precedent but for its persuasive value— it is old news that the government may not lure the unwary service-member into making dubious waivers as a 'smoking gun' of a money claim. A damages waiver, where no money claim exists, only muddles the issues while consuming the court's time.

Thirdly, Millican cannot waive prospective pay because he has no such entitlement under law, nor earned the right in any proceeding resulting in pay. It is sufficient that Millican's complaint contains no demand for money nor relies on money-mandating statute. Moreover, he expressly states that this is a claim to only overturn the BCMR's denial of his "records corrections requests." In Calloway, the complaint prompted defendant to assert plaintiff's "ultimate goal was a higher retired

[2] Wolf v. Marsh, 846 F.2d 782 (D.C.Cir. 1988).

pension" because he mentioned his promotion non-selection and involuntary retirement at a lower grade. But the court found it sufficient that plaintiff stated he only sought records corrections. Id 51-52. Calloway did not waive his opportunity, nor did the court require him to, of eligibility to later apply for promotion reconsideration by special selection board [SSB]. See also Sanders v. United States, Ct.Cl. 285, 296, n. 10 (1979)(if an officer complains of a promotion non-selection but is still serving without loss of pay, then back pay claim has not arisen and officer's remedies would be in the district court by mandamus or declaratory judgment); United States v. King 395 U.S. 1, 3 (1969) (where soldier's claim was not for actual presently due money damages, district courts can provide equitable relief to declare his right to have his military records changed to show retirement in proper status).

In sum, defendant cannot rely on any implied or naked money claim to defeat the motion to transfer nor to amend the complaint. So it resorts to "lack of ripeness" as a bootstrap attempt to bar all reservists' claims impacting on promotions until money is due. This is really a spin on the doctrine barring judicial review of non-final agency actions before administrative exhaustion of remedies— the remedy here being successful application at age 60 for a reserve pension. The Air Force BCMR's requirement to exhaust administrative remedies did bar resolution of Millican's records correction claims until he drew his pension. Reply Appendix (AFI 36-2603 at ¶ 3.3). The BCMR statute of limitations of three years began to run when the President removed Millican from the LTC list, was non-selected him again, or involuntarily transferred to an inactive status. 10 U.S.C. § 1552(b).

If one explores defendant's bootstrap argument further, it leads to absurd results. It would mean that despite a BCMR's rejection of a service-member's claim for paper-promotion, the member is denied judicial review of that final agency action until some remote date after drawing a pension. For an enlisted reservist retiring after 20 years at age 38, this would mean the claim would not accrue for judicial review until 22 years later. Under defendant's theory even an active status reservist (monthly drilling) would be barred from judicial review of BCMR rejection of his promotion claim unless the member chooses to stay for 20-years, then waits for pension. In the interim, the six-year

statute of limitations would lapse on judicial review of the BCMR's rejection of records correction claim, and perhaps laches would bar review even earlier. 28 U.S.C. § 2401.

Moreover, § 14502(g) contains no such barrier to judicial review, while the APA only demands final agency action— here, only the rejection of a reserve promotion claim based on the failure of non-selection "without consideration by a special selection board." Id (g)(1)(A). That is the only statutory prerequisite making the promotion claim premature or "inoperative pending final review" by a BCMR. Darby v. Cisneros, 509 U.S. 137, 153 (1993). The courts are not free to impose some new condition to judicial review of an already final agency action unless "expressly required by statute" Id, at 153.

As previously addressed, Bowen resolves this absurd situation by giving reservists an immediate remedy under the APA. It eliminates the lopsided scenario where a BCMR denial of promotion claims are 'final' for their own self-serving purposes but non-final to bar judicial review by the affected member. Defendant wants the court to create a judicial exception to § 14502 to deny any reservist to promptly pursue an equitable remedy. Def.Opp. Mtn.Leave at 3 ("Mr. Millican still seeks an equitable remedy in specific performance to promise eligibility to let him apply in the future for a pension."). Defendant cannot graft a new exhaustion requirement onto § 14502 disguised under the ripeness doctrine.

Reservists in an inactive, non-pay status who bring a judicial challenge to a promotion claim, fall under Bowen. This is because they have not suffered any financial loss nor seeking recovery of compensation owed for a past injury, e.g., not seeking any lost pay differential from a lower pension payment. Moreover, even an equitable injunction in the nature of specific performance to promise future eligibility, is still not an arguable money claim. Prospective eligibility is not prospective entitlement to compensation. But even if a reservist who begins to draw the lower pension while the complaint is pending, this still does not invoke the Tucker Act requiring dismissal. Poole v. Rourke, 779 F.Supp 1546, 1556-57 (E.D. Cal. 1991) (citing Bowen, where airman's original equitable request to enjoin his pending discharge was changed to include back pay after discharge, claim was not for money damages).

The final issue is the exhaustion requirement under 14502(g) that promotions claims first be rejected by BCMR before judicial review. Defendant wants the court to read into § 14502 a requirement that judicial review of promotion claims are premature unless the BCMR's application form contained an explicit "request" that the BCMR apply the SSB remedy. Def.Opp. 4. But defendant offers no rebuttal to Millican's argument pointing to the plain language of § 14502. Its relevant provision merely requires that a "*claim* based. . .on a non-selection for promotion" be presented and rejected by a BCMR without considering a SSB. Id § 14502(g)(1)[emphasis added]. This means BCMR rejection of a claim for promotion where a SSB was never convened. Courts have only required a member bring a promotion claim before a BCMR "asserting the non-selection constituted an error." Scott v. England, 264 F.Supp.2d 5, 8-9 (D.D.C. 2002); see also Darby 509 U.S. at 147 (because statute shows congressional intent on the precise conditions before bringing an appeal, it would be inconsistent with the plain language for courts to require litigants to exhaust optional appeals as well).

Because the BCMR here affirmed the adverse reprimand and performance report, it did not find the promotion list removal was improper nor reach any test for harmless error. This meets § 14502(g)(1)(B) by rejecting the entire promotion claim including *sub silentio* any legal remedies required by law or at issue before the Board. Moreover, this satisfies the broad provision of subsection (h) that a court may review "a determination" by a BCMR where a SSB was not convened.

The Board having rejected the underlying merits of Millican's promotion claim, it would be futile to remand back when the BCMR has finally ruled that Millican was not entitled to higher grade. Baxter v. Claytor, 652 F.2d 181, 185 (D.C.Cir. 1981)(rejecting government's argument that Baxter's claim is premature by not filing the proper form before BCMR: "the requirement that administrative remedies be exhausted does not include the performance of clearly useless acts."). In any event, it is undisputed that when the BCMR considered and rejected the promotion claim, the available remedies at issue before it included an SSB.

Lastly, in Millican's prior pleading, he provided substantial analysis that under Barnes and other cases, he is entitled to numerous valuable remedies under the APA. In response, defendant offers a bald, conclusory statement without any analysis that "no court has jurisdiction to order the amended relief."

CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court grant leave to amend the complaint, and transfer the case to the United States District Court (D.D.C).

May 30, 2006

Respectfully submitted,

a/s, John A. Wickham, Esq.
32975 Saint Moritz Drive
Evergreen CO. 80439-6720
(303) 670-3825