# In the United States Court of Federal Claims

No. 05-1330C
(August 24, 2006)

**UNPUBLISHED**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | |
| MARC J. MILLICAN, | * | Scope of Review under |
| | * | Administrative Procedure Act, 5 |
| *Plaintiff,* | * | U.S.C. § 702 *et seq*. (2000); |
| | * | Equitable Relief versus Claim for |
| v. | * | Money; Judicial Review of |
| | * | Military Promotion Decisions; |
| THE UNITED STATES, | * | Rights of Active Duty Members |
| | * | of Armed Forces versus |
| *Defendant*. | * | Reservists. |
| * * * * * * * * * * * * * * * | * | |

*John A. Wickham*, Evergreen, CO, for plaintiff.

*Gregg M. Schwind*, United States Department of Justice, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *James M. Kinsella*, Deputy Director, Washington, D.C., for defendant. *Charles D. Musselman, Jr.*, United States Air Force Legal Services Agency, Arlington, VA, of counsel.

---

## OPINION AND ORDER

---

**Bush**, *Judge*

Retired Air Force Major Marc J. Millican (Major Millican) filed suit in the United States Court of Federal Claims on December 19, 2005, seeking review of an August 4, 2004 decision by the United States Air Force Board for Correction of Military Records (AFBCMR, board). In the unsuccessful board action, Major

Millican had challenged the Air Force's April 2002 decision to remove his name from its Fiscal Year 2000 Lieutenant Colonel promotion list, and its April 2003 decision to transfer him to the Retired Reserve in the rank of Major, as opposed to Lieutenant Colonel. He also asked the board to remove "related derogatory records" from his personnel file. Compl. at 1. After the AFBCMR denied him relief, plaintiff made claims in this court, arguing that the board decision was arbitrary and capricious.

On March 13, 2006, the United States filed a motion to dismiss Major Millican's claims for lack of subject matter jurisdiction. Plaintiff responded by filing a motion to transfer this suit to a federal district court, and a second motion to amend his complaint to make clear the basis for jurisdiction in that forum. The government opposes both motions. On April 3, 2006, the court suspended briefing on the government's motion to dismiss pending a decision on the motions to transfer and for leave to amend the complaint.

Accordingly, now before the court are Plaintiff's Motion to Transfer, filed March 29, 2006, and Plaintiff's Motion for Leave to Amend Complaint, filed May 2, 2006. The motions have been fully briefed. The United States filed Defendant's Opposition to Plaintiff's Motion to Transfer on April 17, 2006, and Defendant's Opposition to Plaintiff's Motion for Leave to Amend Complaint on May 15, 2006. Major Millican filed Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Transfer on May 2, 2006, and Plaintiff's Reply to Defendant's Opposition to the Motion for Leave to Amend the Complaint on May 30, 2006. For the reasons that follow, the court grants plaintiff's motions, and transfers this suit to the United States District Court for the District of Columbia.

## BACKGROUND

### I. Factual Background

Although the facts which led to plaintiff's request for correction of his military records are not directly relevant to the current motions, a brief summary provides context for his claims. The record is uncontroverted that, through January 1999, Major Millican served as a C-5 pilot in the United States Air Force Reserve's 312th Airlift Squadron, at Travis Air Force Base, California. In late 1998, the Air Force announced a service-wide Anthrax Vaccination Immunization

Program (AVIP). According to plaintiff, the Air Force did not require all Reservists to participate in the program, but instead, asked them to make an informed decision regarding potential risks and benefits of the vaccine. Major Millican alleges, however, that one of his superiors, Lieutenant Colonel Padilla, "issued a punitive policy to end the careers of members refusing the AVIP." Compl. ¶ 4. Meanwhile, in June 1999, plaintiff was considered for promotion to the rank of Lieutenant Colonel. His candidacy was approved, with an effective date of June 22, 2000.

Around July 1999, after attending congressional hearings on the AVIP, Major Millican used an internet website to inform fellow pilots about the risks of the drug. Plaintiff now describes his contribution to that website as "an informational posting of 'both positive and negative' information about the AVIP." *Id.* ¶ 11. Ultimately, Major Millican decided not to participate in the program. Shortly thereafter, Lieutenant Colonel Padilla allegedly informed plaintiff that, if he refused the vaccine, he would no longer be eligible to perform Unit Training Assemblies (UTAs),[1] and would be transferred to the inactive Standby Reserve.[2] *Id.* ¶ 16. As suggested, Major Millican's commander provided him notice of the transfer on November 15, 1999, and the transfer was finalized on December 19, 1999. The transfer was based on "unsatisfactory Reserve participation" in UTAs. *Id.* ¶ 18. On the same day, Lieutenant Colonel Padilla issued a Letter of Reprimand (LOR) to plaintiff which stated that Major Millican had caused "discontent and disloyalty" within the Air Force. Plaintiff alleges that this letter was issued shortly after he spoke with reporters from a local newspaper about his refusal to participate in the AVIP. *Id.* ¶ 19 & n.3.

Apparently, plaintiff had continuing difficulties following his reassignment to the Standby Reserve. *Id.* ¶ 23. In March 2000, Lieutenant Colonel Padilla

---

[1]/ Unit Training Assemblies are routine drills performed by Air Force Reservists.

[2]/ All Reservists are assigned to one of three categories: the Ready Reserve, the Standby Reserve, or the Retired Reserve. 10 U.S.C. § 10141(a) (2000). "Reserves who are on the inactive status list of a reserve component . . . are in an inactive status. Members in the Retired Reserve are in a retired status. All other Reserves are in an active status." *Kosmo v. United States*, - - Fed. Cl. - -, 2006 WL 2079102 at n.3 (July 25, 2006) (quoting 10 U.S.C. § 10141(b)). "Active status" is a term used only by the Reserves, and is used to describe those officers who are eligible for promotion. *Reeves v. United States*, 49 Fed. Cl. 560, 561 n.3 (2001).

issued an "Officer Performance Report" (OPR), for the period of July 1998 through February 2000, which repeated the allegations in the LOR. In response to the LOR and OPR, Air Force officials determined that Major Millican's name should be removed from the Fiscal Year 2000 Lieutenant Colonel promotion list, and that the Air Force's promotion order therefore had no effect. Two years later, on April 17, 2002, President George W. Bush removed Major Millican's name from the promotion list. Plaintiff alleges, however, that the decision to revoke his promotion was untimely, and therefore had no effect.

In October 2002, Major Millican was considered for, and denied promotion by an Air Force selection board. By statute, that failure was deemed his second non-selection for promotion– the first being the removal of his name from the Fiscal Year 2000 Lieutenant Colonel promotion list in April 2002. *See* 10 U.S.C. § 14501(b)(3)(a) (2000).[3] Because plaintiff had twice been passed over for promotion, the Air Force was required, by statute, to remove him from "reserve active-status." 10 U.S.C. § 14506 (2000). Accordingly, on April 1, 2003, plaintiff was transferred to the Retired Reserve. Three months later, in July 2003, he applied to the AFBCMR for relief. Major Millican's request was denied in August 2004, and his complaint at the Court of Federal Claims followed.

## II. Procedural History

In his original complaint, Major Millican alleged that he had engaged in constitutionally protected activity when he shared information about the AVIP

---

[3]/ This statute provides, in relevant part, that

> [a]n officer shall be considered for all purposes to have twice failed of selection for promotion if . . . [t]he officer's name has been removed from . . . a promotion list under section 14310 of this title after recommendation by a mandatory promotion board convened under section 14101(a) or by a special selection board convened under section 14502(a) or 14502(b) of this title and . . . the officer is not recommended for promotion by the next mandatory promotion board convened under section 14101(a) or special selection board convened under section 14502(a) of this title for that officer's grade and competitive category . . . .

10 U.S.C. §14501(b)(3)(a) (2000).

with his colleagues. He argued that this activity, described by Lieutenant Colonel Padilla as "disloyal," was a "substantial or motivating factor in the retaliatory actions" by the Air Force, including issuance of the LOR and the negative OPR, and the removal of his name from the Fiscal Year 2000 Lieutenant Colonel promotion list. Compl. ¶ 42. Major Millican argued that the board's refusal to correct his records was arbitrary and capricious, an abuse of discretion, and contrary to law. He asked that the AFBCMR be ordered to set aside his removal from the Fiscal Year 2000 Lieutenant Colonel promotion list, and the second non-selection for promotion, and to promote him to the rank of Lieutenant Colonel "by operation of law." Plaintiff also asked that the board be ordered to "constructively reinstate" him to participating Reserve status, with constructive service credit points towards retirement. *Id.* at 13. He further sought correction of his transfer to the Retired Reserve to reflect retirement in the rank of Lieutenant Colonel, rather than Major, with an increase in retirement pay and other benefits. Plaintiff also asked that all adverse documents be expunged from his official military record, including but not limited to the LOR, the OPR, and statements regarding his unsatisfactory UTA performance, promotion propriety actions, and his involuntary retirement. Finally, Major Millican asked that the matter be remanded to the AFBCMR, so that it could determine whether he was entitled to back drill pay for missed UTAs and other annual training he was precluded from attending after he refused to participate in the AVIP.

Three months after the suit was filed, the United States moved to dismiss it, under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, for lack of subject matter jurisdiction.[4] Defendant argued, primarily, that Major Millican's claim for promotion to the rank of Lieutenant Colonel was not based on a money-mandating statute, which is a prerequisite to jurisdiction in this court. Because plaintiff had made no claim for "actual presently due money damages," the government insisted that dismissal was required. Def.'s Mot. at 5. Defendant also argued that the court could not void or order removal of adverse documents from Major Millican's personnel file, because the Court of Federal Claims may order the correction of military records only in conjunction with an award of money. Here, the government posited, because plaintiff had requested no related

---

[4]/ Defendant also moved to dismiss a number of Major Millican's claims under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. *See* RCFC 12(b)(6). Because this opinion addresses subject matter jurisdiction and the propriety of transfer only, those arguments need not be summarized.

money damages, the court had no authority to correct his records, or to order his "constructive reinstatement" in the Air Force Reserve. Defendant conceded that Major Millican had asserted one general claim for money, when he requested the future calculation of his retirement pay in a higher pay grade, to reflect the rank of Lieutenant Colonel. The government argued, however, that the issue of retirement pay could be reviewed only to determine whether the Air Force had followed its own regulations. Defendant also pointed out that this money claim was not related to the accuracy of plaintiff's military records, and thus did not create jurisdiction over the records correction claim. Finally, the United States argued that 10 U.S.C. § 14502 (2000) deprived the court of jurisdiction to consider Major Millican's claims which challenged the military's promotion decisions.

Plaintiff did not respond directly to the government's motion to dismiss. Instead, on March 29, 2006, Major Millican filed a motion to transfer this lawsuit to a federal district court, under 28 U.S.C. § 1631 (2000). Plaintiff concedes that his claims do not seek retrospective money damages from the United States, but instead, present equitable requests for a declaration, an injunction, and prospective money relief. Plaintiff argues that although these claims fall outside the jurisdiction of the Court of Federal Claims, they may be reviewed in a federal district court under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. §§ 702-706 (2000). In fact, Major Millican contends that the Court of Federal Claims has transferred similar claims to district courts on more than one occasion. Pl.'s Mot. Trans. at 3 (citing *James v. Caldera*, 159 F.3d 573 (Fed. Cir. 1998); *Crane v. United States*, 41 Fed. Cl. 338 (1998); *Schmidt v. United States*, 3 Cl. Ct. 190 (1983)). Plaintiff argues further that a transfer is in the interest of justice because, if his claims are dismissed, he will be precluded from addressing the reputational injury he believes he has suffered as a result of the Air Force's actions. Plaintiff also points out that a dismissal would require him to re-file his claim in a district court, resulting in additional filing fees and unnecessary delay.

The government disagrees with these contentions. Defendant argues that a transfer is inappropriate here because, despite Major Millican's attempt to characterize his claims as equitable in nature, his suit "explicitly and unavoidably" seeks a financial award from the United States. Def.'s Opp. Trans. at 1. The government highlights plaintiff's stated goal to obtain an order to the Air Force requiring it to transfer him to the Retired Reserve at a higher rank, with increased retirement pay. The United States insists that this money claim cannot be reviewed

under the APA, because that statute waives the government's sovereign immunity for non-money claims only. Defendant also points out that because Major Millican cannot base his claims on any money-mandating statute, he cannot invoke district court jurisdiction by relying on the Little Tucker Act. Finally, the government contends that, even if jurisdiction exists in a district court, a transfer would not be in the interest of justice, as Major Millican's claims are neither ripe nor subject to judicial review.

## DISCUSSION

### I. Standard of Review

#### A. Amendment of Complaint

The court must first address Major Millican's request for leave to amend his complaint. RCFC15(a) governs the amendment of pleadings in this court, and provides, in relevant part, as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

RCFC 15(a). Here, because a response has been served and the government opposes plaintiff's motion to amend the complaint, amendment may only occur by leave of the court. *Id.*

There is no question that the determination whether to grant leave to amend a complaint under Rule 15(a) falls within the sound discretion of the trial court. *Holland v. United States*, 62 Fed. Cl. 395, 406 (2004). The granting of such motions is generally favored, because "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182

(1962). Some circumstances, however, can justify denial of leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, futility of amendment, etc. . . . ." *Id.* A motion to amend may be denied as futile, for example, if a claim added by the amendment would not withstand a motion to dismiss. *Shoshone Indian Tribe of the Wind River Reservation, Wyo. v. United States*, 71 Fed. Cl. 172, 176 (2006). Similarly, "[w]here the proposed amendment would be subject to the same legal defect found by the court to justify dismissal of claims under the original complaint, leave to amend may be denied." *Id.* It is important to recognize, however, that courts are not to delve into an in-depth examination of the merits of a lawsuit in the context of considering a motion to amend. Instead, the correct approach is to inquire whether a proposed amendment is frivolous and insufficient on its face. *See St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 155 (1994) (stating that "[w]hen futility is asserted as a basis for denying a proposed amendment, courts do not engage in an extensive analysis of the merits of the proposed amendments . . . . Instead, courts simply decide whether a party's proposed amendment is facially meritless and frivolous . . . .").

Here, there is no evidence, nor even an allegation, that Major Millican acted in bad faith or in a dilatory manner when he filed suit in this court. The government does argue, however, that even if plaintiff is permitted to amend his complaint in the manner proposed, a district court will lack jurisdiction to consider his claims. For that reason, defendant insists that amendment is futile, and the motion for leave to amend should be denied. To test defendant's theory, the court will examine Major Millican's proposed amended complaint, and the specific claims asserted therein, to determine if a district court could properly exercise jurisdiction over them. That inquiry will reveal whether leave to amend should be granted, and will also weigh heavily on whether transfer is appropriate. In that regard, the motions will be analyzed simultaneously.

### B. Transfer of Complaint to District Court

Plaintiff has filed a motion to transfer his claims to an appropriate district court, as he concedes that they fall outside this court's jurisdiction. Section 1631 of title 28 of the United States Code provides that

> [w]henever a civil action is filed in a court as defined in

> section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Transfer under this section is appropriate if "(1) the transferor court lacks . . . jurisdiction; (2) at [the] time the case was filed, it could have been brought in the transferee court; and (3) such transfer is in the interest of justice." *Gray v. United States*, 69 Fed. Cl. 95, 98 (2005) (internal quotation marks omitted); *see also Smith v. Sec'y of the Army*, 384 F.3d 1288, 1291 (Fed. Cir. 2004). Whether a case should be transferred to a district court, from the Court of Federal Claims, is a discretionary matter which should be decided based upon the "peculiar facts and circumstances" presented. *Bienville v. United States*, 14 Cl. Ct. 440, 445 (1988); *see also Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1375 (Fed. Cir. 2005) (concluding that transfer was appropriate because "the circumstances of this case and justice require transfer, the record does not show that transfer would unduly burden the judicial system, and the government cannot logically show that it will be harmed by transfer"); *Warr v. United States*, 46 Fed. Cl. 343, 352 (2000).

Here, because the parties agree that the Court of Federal Claims, the putative transferor court, lacks jurisdiction over Major Millican's claims, no discussion of the first factor relative to transfer is necessary. The parties disagree, however, on whether these claims could properly be filed in a district court, and whether a transfer would be in the interest of justice.

## II. Whether A Federal District Court May Exercise Jurisdiction Over Major Millican's Claims

Plaintiff initially contended that the Court of Federal Claims could exercise jurisdiction over his claims under the Tucker Act, codified at 28 U.S.C. § 1491(a)

(2000). That statute "confers jurisdiction upon the Court of Federal Claims over [] specified categories of actions brought against the United States . . . ." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*). These include claims founded on the Constitution, an act of Congress, a regulation promulgated by an executive department, or any express or implied contract with the United States, and claims for liquidated or unliquidated damages in cases not sounding in tort. *Id.* (citing 28 U.S.C. § 1491(a)(1)); *see also Ky. Bridge & Dam, Inc. v. United States*, 42 Fed. Cl. 501, 516 (1998) (citing *United States v. Mitchell*, 445 U.S. 535, 538, *reh'g denied*, 446 U.S. 992 (1980); *United States v. Testan*, 424 U.S. 392, 398-99 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983) (*en banc*)). The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Fisher*, 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or a right to recover money damages in the Court of Federal Claims. *Id.*; *see also Mitchell*, 445 U.S. at 538. Instead, "to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172. In other words, the source must be money-mandating, in that it "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967) and citing *Mosca v. United States*, 417 F.2d 1382, 1386 (Ct. Cl. 1969)); *see also Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States*, 956 F.2d 259, 261 (Fed. Cir. 1992) (citing *United States v. Mitchell*, 463 U.S. 206, 218 (1983)).

Major Millican's original complaint relied on 10 U.S.C. § 12731(a) (2000), a federal statute which addresses entitlement to retirement pay, as the money-mandating provision upon which Tucker Act jurisdiction was predicated.[5] The

---

[5]/ That section provides as follows:

> (a) Except as provided in subsection (c), a person is entitled, upon application, to retired pay computed under section 12739 of this title, if the person--
> 
> (1) is at least 60 years of age;

(continued...)

parties now agree, however, that plaintiff has no current right to money damages under that statute, which provides a legal right to retirement pay to members of the Retired Reserve only after they reach the age of sixty years (Major Millican is forty-nine years old).[6] The parties further agree that plaintiff cannot rely on any other money-mandating provision as the basis for his claims, and so, Tucker Act jurisdiction is unavailable to him.[7]

---

[5](...continued)

> (2) has performed at least 20 years of service computed under section 12732 of this title;
> (3) in the case of a person who completed the service requirements of paragraph (2) before the end of the 180-day period beginning on the date of the enactment of the National Defense Authorization Act for Fiscal Year 2005, performed the last six years of qualifying service while a member of any category named in section 12732(a)(1) of this title, but not while a member of a regular component, the Fleet Reserve, or the Fleet Marine Corps Reserve, except that in the case of a person who completed the service requirements of paragraph (2) before October 5, 1994, the number of years of such qualifying service under this paragraph shall be eight; and
> (4) is not entitled, under any other provision of law, to retired pay from an armed force or retainer pay as a member of the Fleet Reserve or the Fleet Marine Corps Reserve.

10 U.S.C. § 12731 (2000).

[6]/ It appears that a Retired Reservist who has reached the age of sixty can make a money-mandating claim under 10 U.S.C. § 12731. *See Kosmo*, - - Fed. Cl. - - , 2006 WL 2079102 at n.1 (stating that, although defendant initially argued that plaintiff could not make money-mandating claim under § 12731 because he was not yet of retirement age, that argument was mooted when plaintiff reached his sixtieth birthday during pendency of proceeding). The record is clear, however, that Major Millican was forty-nine years old at the time these motions were filed, and so, he has no current entitlement to retirement pay under this statute.

[7]/ Typically, plaintiffs who seek military back pay or records correction before the Court of Federal Claims rely on 37 U.S.C. § 204(a) (2000) as the money-mandating statute which creates Tucker Act jurisdiction over their claims. *Reeves*, 49 Fed. Cl. at 565-66 (citing *Holley v. United States*, 124 F.3d 1462, 1465, *reh'g denied* (Fed. Cir. 1997)). The law is clear, however, that this statute provides no rights to Reservists like Major Millican. *See id.*

Major Millican now argues that his claims are amenable to review by a federal district court under the APA, 5 U.S.C. § 702 *et seq*. Section 10(a) of the APA, codified at 5 U.S.C. § 702, provides judicial review to any plaintiff who claims he is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1291 (Fed. Cir. 2004) (quoting 5 U.S.C. § 702). The general federal question statute, 28 U.S.C. § 1331, provides district courts with jurisdiction to review such claims. *Id.* (citing *Califano v. Sanders*, 430 U.S. 99 (1977)). It is clear, however, that "[t]he APA waives the sovereign immunity of the United States only for '[a]n action in a court of the United States seeking relief other than money damages.'" *James v. Caldera*, 159 F.3d 573, 578 (Fed. Cir. 1998) (quoting 5 U.S.C. § 702); *and see Smith*, 384 F.3d at 1291. Thus, when a plaintiff seeks money damages from the government, he cannot rely on the APA, and instead must invoke a different waiver of sovereign immunity, such as the one embodied in the Tucker Act. *James*, 159 F.3d at 578 (citing *National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997)). The APA's waiver of sovereign immunity is further narrowed by section 10(c) of the Act, 5 U.S.C. § 704, which limits the availability of review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Smith*, 384 F.3d at 1292 (citing *Mitchell v. United States*, 930 F.2d 893, 895 (Fed. Cir. 1991)). Frequently, plaintiffs who hope to challenge military personnel actions in a federal district court under the APA are required to demonstrate that they do not have an adequate remedy in the Court of Federal Claims under the Tucker Act. If they do, 5 U.S.C. § 704 bars APA review.

Here, Major Millican argues that his complaint seeks correction of his military records only, and *not* monetary damages from the government, making APA review in a district court appropriate. Plaintiff states that he does not seek to compel the Air Force to bypass its retirement pay process and pay him benefits in advance, or even to grant him a future right to such pay. Pl.'s Reply Trans. at 2-3. Instead, he seeks only a review of whether the board's refusal to overturn the removal of his name from the Fiscal Year 2000 Lieutenant Colonel promotion list, and his subsequent transfer to the Retired Reserve in the rank of Major, was proper. Plaintiff posits that, even if he succeeds on his claims, he will be neither factually nor legally entitled to money from the government. Major Millican admits that, if he prevails in having his records corrected to reflect the rank of Lieutenant Colonel, rather than Major, he may ultimately profit from an increase in his retirement pay or benefits. He argues, however, that this benefit would be no

more than a collateral consequence of this litigation, and thus should not foreclose APA review. *Id.* at 3 (citing *Crane v. United States*, 41 Fed. Cl. 338, 340 (1998); *ben-Shalom v. Dep't of the Army*, 807 F.2d 982, 983, 987 (Fed. Cir. 1986)). Moreover, Major Millican points out that financial benefits might not even arise, as they depend on whether he chooses to apply for Air Force retirement benefits in the future. Major Millican concedes that an APA claim might be impermissible in a case in which the equitable relief requested by a plaintiff would trigger automatic and unavoidable monetary gain. But he contends that no such roadblock exists when, as here, the matter of additional pay is speculative.

In response, the United States contends that although plaintiff explicitly seeks only an injunction ordering the Air Force to correct his records, his real goal is to have those records corrected to reflect a higher rank, and thereby gain entitlement to increased retirement pay. The government argues that, at bottom, this suit seeks money damages, and thus it is not suitable for APA review.

Before examining the specifics of the parties' arguments, it is important to recognize that a court's inquiry into the nature of a plaintiff's claim "does not end with the words of the complaint, however instructive they may be, for [the court] still must 'look to the true nature of the action in determining the existence or not of jurisdiction.'" *James*, 159 F.3d at 579 (citing *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)). Similarly, a claimant's subjective motivation to file an action does not govern the issue of jurisdiction. *Smith*, 384 F.3d at 1294 (citing *Holley*, 124 F.3d at 1462). Indeed, if a plaintiff asserts a claim which satisfies the jurisdictional requirements of the Tucker Act, the Court of Federal Claims must entertain it, thereby precluding APA review, regardless of whether the claimant's primary motivation was merely to "clear his name." *See Smith*, 384 F.3d at 1294; 5 U.S.C. § 704. In other words, "[j]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim as a claim requesting a form of equitable relief." *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (internal quotation marks omitted). As the briefing summarized above makes clear, the interplay between the two jurisdictional statutes is critical here.

A number of courts have been called upon to address the somewhat blurry lines between APA and Tucker Act jurisdiction in the context of military record correction claims. A review of those decisions shows that, in cases in which a plaintiff requests equitable relief and concurrently fails to request monetary relief, his claim cannot be deemed one for money, and APA review is permissible. *Tootle*

*v. Sec'y of the Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006) (holding that a claim was not "in essence" one for monetary relief, and noting that the complaint "[did] not explicitly request money damages"); *Kidwell*, 56 F.3d at 285 (holding that jurisdiction under the APA was proper in district court because, although plaintiff "hint[ed]" at a monetary interest, his complaint did not explicitly request monetary relief); *ben-Shalom*, 807 F.2d at 987 (holding that APA jurisdiction existed and noting that plaintiff did not ask for money damages in her complaint); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 52 (D.D.C. 2005) (holding that APA jurisdiction existed because plaintiff's complaint explicitly disclaimed a request for monetary relief); *see generally Crane*, 41 Fed. Cl. at 340; *cf. Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991) (holding that no APA jurisdiction existed where the plaintiff requested active duty back pay and other relief based on a specific statute); *Williams v. Sec'y of the Navy*, 787 F.2d 552, 556 (Fed. Cir. 1986) (holding that no APA jurisdiction existed where the plaintiff specifically requested "payment of all forfeitures, lost duty pay, and back pay").

Similarly, record correction claims which do not implicate a monetary award in any way are subject to APA review, regardless of whether the plaintiff has included an express disclaimer of money damages in his complaint. *James*, 159 F.3d at 580 (holding that, by seeking removal of a bar to re-enlistment which had been placed in his file, the plaintiff "clearly [was] not seeking money damages," and his claim fell within the APA's waiver of sovereign immunity). In fact, such claims are outside the parameters of the Court of Federal Claims' Tucker Act jurisdiction unless they are somehow "tied and subordinate to" a separate claim for money. *Id.* at 580-81. In addition, a request for "costs and all other relief deemed just and proper" is mere surplusage which does not transform an equitable claim into one for money, given a district court's duty to grant such relief even if not specifically requested. *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 534 (D.C. Cir. 1988) (citing *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986)); *Crane*, 41 Fed. Cl. at 340 (holding that plaintiff's request for "such other and further relief this Court deems just and proper" was no more than a standard procedural phrase which did not translate into a claim for money).

The law is also relatively clear regarding cases in which a plaintiff has not specifically requested financial recovery, but the equitable relief sought may potentially give rise to a future claim for money. Generally, courts caution against a speculative assumption that a plaintiff will later pursue monetary damages as a basis for declining APA jurisdiction. *Crane*, 41 Fed. Cl. at 341 (stating that "[b]y

asking the court to infer that plaintiff will eventually seek money damages, defendant is asking the court to embark on a perilous journey," and that, "[i]f this court were to proceed to hear plaintiff's case and monetary damages were never sought, much time and effort would have been spen[t] to address questions whose answers this court has no statutory power to provide"). In other words, courts typically reject the premise that, when a plaintiff makes an equitable request for record correction which may affect his rank or other status, his claim "implicitly" seeks additional pay, and should therefore be treated as one for money. *See, e.g.*, *ben-Shalom*, 807 F.2d at 987-88; *Crane*, 41 Fed. Cl. at 341.

The United States Court of Appeals for the District of Columbia Circuit has held, for example, that "a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff." *Vietnam Veterans of Am.*, 843 F.2d at 534. In so holding, the court rejected an argument that a claim seeking amendment of a discharge record was one for money because a "direct, automatic, and unavoidable consequence" of an upgrade would be payment for leave accrued at the time of discharge. *Id.* The court explained that claims should be reviewed under the Tucker Act when a plaintiff seeks money, or the court expressly grants money, but not when a plaintiff seeks and is granted injunctive relief only. *Id.*; *see Calloway*, 366 F. Supp. 2d at 52 ("The argument that some subsequent monetary benefit by a plaintiff would divest this Court of jurisdiction has been rejected by the District of Columbia Circuit."). Further, when the prospect of a monetary recovery by the plaintiff arises from the possibility of a collateral proceeding, the basis for APA jurisdiction in a district court is even clearer. *Calloway*, 366 F. Supp. 2d at 53 (citing *Vietnam Veterans of Am.*, 843 F.2d at 534) ("[A]ny relief the plaintiff may be entitled to is certainly not automatic and would not flow directly from the outcome of this litigation . . . . Thus, the Court's jurisdiction in this case is even clearer than was the situation presented to the Circuit Court in *Vietnam Veterans of Am.*, because in that case monetary relief would flow directly from the district court's actions."); *see also Tootle*, 446 F.3d at 175; *Kidwell*, 56 F.3d at 286. In fact, within the District of Columbia Circuit, courts have held that APA jurisdiction may exist so long as the equitable relief sought by a plaintiff is not "negligible in comparison" to his monetary claims. *Kidwell*, 56 F.3d at 285-86 (holding that a request for equitable relief could be considered under the APA because it was not "negligible in comparison" to the monetary claims, but would in fact "lift some of the shame associated with failing to receive an honorable discharge"); *Calloway*, 366 F. Supp. 2d at 53 n.8 (holding that, even if the equitable relief requested would automatically trigger the payment

of money, it was "of sufficient importance relative to the monetary award to support [APA] jurisdiction"); *see also Tootle*, 446 F.3d at 174-75. In 2005, the United States District Court for the District of Columbia reviewed judicial opinions on this matter, and summarized a "bright-line test" it had culled from the decisions of the District of Columbia Circuit:

> a case is based on the Tucker Act's waiver of sovereign immunity only if the plaintiff seeks money or the district court grants it. However, where monetary benefits would flow to the plaintiff not from the district court's exercise of jurisdiction, but from the structure of statutory and regulatory requirements governing compensation . . . the monetary benefit will not defeat jurisdiction in [the district court]. . . . [T]his simply means that a district court will not lose jurisdiction over a claim for injunctive relief where that injunctive relief triggers the payment of money, *so long as the injunctive relief is of sufficient importance relative to the monetary award to support jurisdiction.* In addition, the Court must also consider whether the equitable relief requested has value independent of its financial aspect.

*Calloway*, 366 F. Supp. 2d at 50-51 (internal quotations and citations omitted) (emphasis in original).

The United States Court of Appeals for the Federal Circuit takes a slightly different approach. The Federal Circuit has held that Tucker Act jurisdiction, rather than APA jurisdiction, might exist in cases in which the statutory or regulatory scheme relied on by the plaintiff would give him a "firm right" to the equitable relief sought, which would then lead to monetary recovery. *James*, 159 F.3d at 582. In *James*, for example, the plaintiff challenged the Army's denial of his request to extend his enlistment. *Id*. The court explained first that, if the plaintiff could prove, as he had alleged, that the Army had actually extended his enlistment, but then failed to allow him to serve the additional time, his right to back pay for the months in which he had been wrongfully discharged would serve as the basis for Tucker Act jurisdiction. *Id.* (stating that "[i]n the case of a wrongful discharge during his unexpired term of enlistment (as extended), James would have been entitled to backpay from the period from the date of the discharge

to the end of the extended term"). The court then posited that, if the relevant Army regulations gave one in the plaintiff's position a "firm right" to an enlistment extension, as a matter of law, his claim might be appropriate for consideration under the Tucker Act.[8] *Id.* On the other hand, the court explained, if the plaintiff merely sought to challenge the Army's exercise of discretion in the matter of the enlistment extension request, there would be no money-mandating statute or regulation on which he could rely, making Tucker Act jurisdiction unavailable. *Id*. In such a case, APA review would be appropriate.[9] *See id.*

Clearly, there is some uncertainty in the law regarding the extent of APA jurisdiction over equitable claims which may implicate a monetary recovery. The specific facts presented here make it clear, however, that APA jurisdiction exists over Major Millican's claims, under any court's interpretation. First, and most obviously, plaintiff's claim for removal or correction of certain documents placed in his personnel file "clearly is not seeking money damages." *James*, 159 F.3d at 580. There is no question that this claim is subject to APA review, and could have been filed in a federal district court in the first instance.

Plaintiff's claims for review of the Air Force's April 2002 decision to remove his name from the Fiscal Year 2000 Lieutenant Colonel promotion list, and his eventual transfer to the Retired Reserve as a Major rather than as a Lieutenant Colonel, require a more extensive analysis. Viewed one way, Major Millican's requests appear to be directed at changing his rank only. Viewed in a different light, however, the claims seek to change plaintiff's rank and therefore increase his retirement pay. In that regard, they could be seen as money claims. There is no question, of course, that Tucker Act jurisdiction over these claims is absent. Even under the narrow reading of APA jurisdiction espoused in *James*, Major Millican would be required to point to statutes or regulations which, at minimum, gave him a "firm right" to the equitable relief sought, and thus, to collect monetary

---

[8]/ The court went on to distinguish the facts presented from those considered by the Federal Circuit in *Mitchell*, 930 F.2d at 894. *James*, 159 F.3d at 583 (explaining that, in *Mitchell*, Tucker Act jurisdiction existed because the plaintiff asserted entitlement to back pay based on a statute that gave him the right to serve on active duty for a specified amount of time, and another statute that entitled him to pay for that service).

[9]/ The Federal Circuit ultimately remanded *James* to the district court, to determine whether the relevant statutes and regulations indeed provided the plaintiff with a "firm right" to the relief sought. *James,* 159 F.3d at 583-84.

compensation, before Tucker Act jurisdiction would arise and preclude APA review. *Cf. James*, 159 F.3d at 582-83. The parties agree, however, that plaintiff can cite to no such source of money-mandating law. Indeed, that fact was the basis for defendant's motion to dismiss.

The more relevant concern is whether plaintiff's equitable claims implicate money damages, independent of a money-mandating statute or regulation, to an extent that they nonetheless evade APA review. At the outset, the court notes that plaintiff's separate motion for leave to amend his complaint seeks to conform the phrasing of these claims specifically to Major Millican's intent to seek equitable relief only. Because plaintiff essentially disclaims a request for monetary damages, there is no explicit basis on which to conclude that his complaint falls outside the parameters of APA jurisdiction. *See and compare ben-Shalom*, 807 F.2d at 987; *Calloway*, 366 F. Supp. 2d at 52. For that reason, this case can be easily distinguished from the facts presented in *Mitchell v. United States*, 930 F.2d 893 (Fed. Cir. 1991), an opinion relied on by the government to show that APA jurisdiction is unavailable here. In *Mitchell*, the plaintiff explicitly requested back pay in his complaint, and "asserted that he was entitled to back pay because a statute" guaranteed his right to that pay. *James*, 159 F.3d at 583 (explaining and distinguishing holding of *Mitchell*, 930 F.2d at 896). In other words, he "claimed a present entitlement to money in the form of back pay, a claim clearly within the Tucker Act jurisdiction of the Claims Court." *Id.* Here, in contrast, plaintiff states that he does not seek back pay, and the parties agree that he cannot cite a statute which purportedly entitles him to pay of any sort.

The court agrees with defendant that the relief sought by Major Millican could, hypothetically, result in pecuniary gain to him. Indeed, if plaintiff ultimately succeeds in having his records changed, to reflect a rank of Lieutenant Colonel rather than Major, the Air Force might someday award him additional retirement pay based on that rank. Under the reasoning of cases summarized above, however, that fact alone does not foreclose APA review. *See ben-Shalom*, 807 F.2d at 987-88; *Crane*, 41 Fed. Cl. at 341. Further, the facts presented here demonstrate that any potential monetary gain which might flow to plaintiff as a result of this litigation will not arise from it directly, but will result, if at all, from a collateral proceeding. *See Tootle*, 446 F.3d at 175; *Kidwell*, 56 F.3d at 286; *Calloway*, 366 F. Supp. 2d at 53. Indeed, one unique aspect of this case makes that fact abundantly clear.

As noted earlier, plaintiffs seeking correction of military records and an increase in back pay typically sue in the Court of Federal Claims under the money-mandating Military Pay Act, found at 37 U.S.C. § 204 (2000). That statute provides, in relevant part, that "a member of a uniformed service who is on active duty . . . [is] entitled to the basic pay of the pay grade to which assigned . . . ." 37 U.S.C. § 204(a); *see also Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) ("In the context of military discharge cases, the applicable 'money-mandating' statute that is generally invoked is the Military Pay Act, 37 U.S.C. § 204."); *Lewis v. United States*, 67 Fed. Cl. 158, 161 (2005). It is well-settled that 37 U.S.C. § 204(a) is the "primary military pay authority for active duty service members," and that it "entitles service members on active duty to pay commensurate with their rank and years of service." *Reeves v. United States*, 49 Fed. Cl. 560, 566 (2001) (citing *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993)). Under the statute, an active duty service member's legal entitlement to pay is not extinguished if he is improperly discharged, and that entitlement can serve as a "money-mandating" statutory basis for a military pay claim under the Tucker Act. *Id.* There is no question, however, that 37 U.S.C. § 204(a) is not applicable to non-active duty Reservists like Major Millican. *See id.* For that reason, the Military Pay Act affords him no right to monetary damages.[10] In other words, a Reserve officer cannot state a claim for back pay which is based on unperformed duties, even when the lack of performance was involuntary and improperly imposed.[11] *Palmer*, 168 F.3d at 1314; *Reeves*, 49 Fed Cl. at 566. Accordingly, Major Millican cannot make a claim for pay based on an allegation that the Air Force wrongfully precluded him from performance. *See and compare Dehne v. United States*, 970 F.2d 890, 893 (Fed. Cir. 1992); *Reeves*, 49 Fed. Cl. at 566; *Neuren v. United States*, 41 Fed. Cl. 422, 426-27 (1998). For that reason,

---

[10]/ Instead, Reservists may qualify for basic pay under a different provision, 37 U.S.C. § 206(a) (2000). That statute entitles inactive duty members to pay for regular training and drills, but only for duty of that sort which is actually performed. *Reeves*, 49 Fed. Cl. at 566 (citing *Ayala v. United States*, 16 Cl. Ct. 1, 4 (1988)). Here, plaintiff has not alleged that the Air Force owes him money for unpaid duty he performed in accordance with § 206(a).

[11]/ The Federal Circuit has noted this unusual scheme: "[t]his anomaly is the result of the juxtaposition of the Supreme Court's view of the Tucker Act and its requirement that there be a separate money-mandating act . . . with the way in which Congress has written the military pay statutes for inactive duty members." *Palmer*, 168 F.3d at 1314 (citation omitted); *see also Reeves*, 49 Fed. Cl. at 567.

plaintiff's only opportunity to recover additional monies from the Air Force, as a result of this litigation, arises from the fact that it may enable him to apply for increased retirement benefits when he reaches the age of sixty. *See* 10 U.S.C. § 12731. Thus, if and when any monetary benefits do flow from Millican's efforts in a district court, they will flow indirectly from that victory. *See and compare Kidwell*, 56 F.3d at 286; *Calloway*, 366 F. Supp. at 52; *see also Vietnam Veterans of Am.*, 843 F.2d at 534. This potential monetary gain cannot be cited as the basis on which to deem Major Millican's claims as ones for money.

Further, defendant has raised no more than its own suspicion that Major Millican will one day seek additional retirement pay from the United States as the basis for treating his claims as ones for money. Major Millican is correct that, to assume that plaintiff will eventually seek collateral money damages from the Air Force, via the retirement pay statute, is precisely the type of speculation in which previous courts have wisely refused to engage. *See and compare Crane*, 41 Fed Cl. at 341. Finally, the court is reluctant to conclude that the equitable relief requested by Major Millican is slight in comparison to his purported desire to obtain monetary damages. It seems obvious that plaintiff's effort to void the removal of his name from the Fiscal Year 2000 Lieutenant Colonel promotion list, and to have documents related to the adverse LOR and OPR, his allegedly unsatisfactory UTA performance, and his involuntary retirement expunged from his official military record, could "lift some of the shame associated with" the Air Force's allegation that Major Millican caused "discontent or disloyalty" within its ranks. *Kidwell*, 56 F.3d at 285; *see also Tootle*, 446 F.3d at 175. While defendant may not consider that goal meritorious in its own right, previous opinions which have addressed similar claims disagree, and the court concurs with those decisions.

For all of these reasons, the court concludes that Major Millican's equitable claims, including a request for review of the Air Force's decisions to remove his name from the Fiscal Year 2000 Lieutenant Colonel promotion list, and to transfer him to the Retired Reserve in the rank of Major, and his request to set aside or expunge various items from his personnel file, are claims which a federal district court would have jurisdiction to review, under the APA. It follows, then, that these claims could have been filed initially in a federal district court. That fact supports plaintiff's motion to transfer. *See Gray*, 69 Fed. Cl. at 98.

## III. Whether Transfer is in the Interest of Justice

**A. Ripeness**

Defendant argues that, even if a district court may exercise jurisdiction over Major Millican's claims, a transfer is not warranted because his request for retirement pay in accordance with the rank of Lieutenant Colonel is not ripe. The government argues that before review of that claim would be proper, the Secretary of the Air Force would have to grant plaintiff's request to convene a Special Selection Board (SSB) to consider his entitlement to the rank, the SSB would have to recommend Major Millican for promotion, and plaintiff would have to be promoted to the rank of Lieutenant Colonel, under procedures set forth in 10 U.S.C. § 14502 (2000). Def.'s Opp. Trans. at 8. Then, defendant posits, the Secretary would have to determine that, notwithstanding the promotion, plaintiff should receive retirement pay in the rank of Major, under 10 U.S.C. § 1370(d)(3)(A) (2000). The United States insists that only then would a court have jurisdiction to review Major Millican's claim. Defendant points out that Major Millican has never requested review by an SSB, and argues that "given that neither of the above actions has actually occurred, no court has the authority to order a remedy because no reviewable action yet exists under either statute." *Id.* at 9.

In response, Major Millican admits that, if he has a potential claim for increased retirement pay, it is not yet ripe. In recognition of that fact, plaintiff's proposed amended complaint no longer includes this claim. Plaintiff argues, however, that his request for review of the Air Force's decision to remove his name from the Fiscal Year 2000 Lieutenant Colonel promotion list is itself a final action which can be considered under the APA. In support of that contention, Major Millican points out that in *Calloway*, the plaintiff asserted a claim for correction of his military records, and the court did not dismiss it as unripe "simply because a future promotion reconsideration board had yet to determine" if the correction would lead to a higher pension for the plaintiff. Pl.'s Reply Trans. at 6 (citing *Calloway*, 366 F. Supp. 2d at 52). And plaintiff suggests that the court may also sever any claim not ripe for review, and transfer only the equitable claim for a record correction to the district court. *Id.* at 7 (citing *Poole v. Rourke*, 779 F. Supp. 1546, 1556 (E.D. Cal. 1991); *Froudi v. United States*, 22 Cl. Ct. 290, 296-97 n.11 (1991)).

The court agrees with plaintiff. Based on Major Millican's initial complaint, there may have been some merit to defendant's argument. Now, however, plaintiff

seeks to amend his complaint to withdraw any putative claim related to his entitlement to retirement pay. His most current pleadings make clear that he seeks only a review of whether the AFBCMR's decision related to the April and October 2002 non-selections were arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *See generally* Am. Compl. Accordingly, assuming this court grants plaintiff's motion to amend his complaint, the United States' argument in this regard is moot.

### B. Review of Promotion Decisions

Last, defendant argues that although Major Millican asks the court to review the Air Force's decision not to select him for promotion, the relief he seeks is unavailable in any court and so, a transfer of that particular claim would be futile. The United States argues that 10 U.S.C. § 14502(g-h) (2000) deprives all courts of jurisdiction to order any relief related to promotion actions by the armed forces. Def.'s Opp. Trans. at 9. Those provisions of the United States Code provide as follows:

> **(g) Limitation of other jurisdiction.** - - No official or court of the United States shall have power or jurisdiction - -
>
> **(1)** over any claim based in any way on the failure of an officer or former officer of the armed forces to be selected for promotion by a selection board convened under chapter 1403 of this title until - -
>
> **(A)** the claim has been referred to a special selection board by the Secretary concerned and acted upon by that board; or
>
> **(B)** the claim has been rejected by the Secretary without consideration by a special selection board; or
>
> **(2)** to grant any relief on such a claim unless the officer or former officer has been selected for promotion by a special selection board convened under this section to consider the officer's claim.
>
> **(h) Judicial review. - - (1)** A court of the United States may review a determination by the Secretary concerned

> under subsection (a)(1), (b)(1), or (e)(3) not to convene a special selection board. If a court finds the determination to be arbitrary and capricious, not based on substantial evidence, or otherwise contrary to law, it shall remand the case to the Secretary concerned, who shall provide for consideration of the officer or former officer by a special selection board under this section.
>
> **(2)** If a court finds that the action of a special selection board which considers an officer or former officer was contrary to law or involved material error of fact or material administrative error, it shall remand the case to the Secretary concerned, who shall provide the officer or former officer reconsideration by a new special selection board.

10 U.S.C. § 14502. Defendant admits that subsection (h) of this statute permits a court to review a Secretary's decision not to convene an SSB, or the conduct of an SSB itself. The government points out, however, that Major Millican has never requested consideration by an SSB, but instead has requested that his two non-selections be "set aside," and that he be promoted "by operation of law." For that reason, the government insists that neither the Court of Federal Claims nor any federal district court has jurisdiction to review Major Millican's non-selection for promotion. Def.'s Opp. Trans. at 10 (citing 10 U.S.C. § 14502; *Scott v. England*, 264 F. Supp. 2d 5 (D.D.C. 2002)).

In response, Major Millican argues that his claim is not removed from judicial oversight by § 14502. Plaintiff points out, correctly, that he does not challenge the Air Force selection board's decision not to promote him, but instead, the manner in which his name was removed from the Fiscal Year 2000 Lieutenant Colonel promotion list. Major Millican contends that, when a claimant challenges his selection and subsequent removal from a promotion list, § 14502 does not bar access to judicial review. In support of those contentions, plaintiff relies on this court's decision in *Barnes v. United States*, 66 Fed. Cl. 497 (2005), *appeal docketed*, No. 06-5030 (Fed. Cir. Dec. 2, 2005). Major Millican also points out that, according to a plain reading of the statute, there is no express requirement that a plaintiff request review by an SSB before filing suit on this type of claim. Plaintiff contends that whether to convene such a reviewing body is a decision left

to the discretion of the board. Major Millican argues that the court cannot graft an additional requirement such as the one suggested by the United States onto the exhaustion requirements which are already set forth explicitly in the statute. Pl.'s Reply Mot. Am. at 5-6 (citing *Darby v. Cisneros*, 509 U.S. 137, 147 (1993)). Plaintiff further notes that the government did suggest use of an SSB during his administrative proceedings, but the selection board declined to do so. Major Millican contends that the board was fully aware of its ability to convene an SSB, and nevertheless chose not to, and that it would be futile for a court to now require plaintiff to return to the administrative level to request such a review. For these reasons, plaintiff asserts that, even if § 14502 does apply to this claim, the situation presented meets the requirements of subsections (g)(1)(B) and (h), and so, a district court may consider, at minimum, whether the decision not to refer the matter to an SSB was proper.

It is true that the courts are quite limited in their ability to review promotion decisions within the armed forces. Indeed, it is clear beyond cavil that the merits of such decisions are nonjusticiable, because "[l]eadership issues are matters for the military, not the judiciary." *Barnes*, 66 Fed. Cl. at 500 (citing *Haselrig v. United States*, 333 F.3d 1354, 1355, 1357 n.3 (Fed. Cir. 2003); *Richey v. United States*, 322 F.3d 1317, 1328 (Fed. Cir. 2003); *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed. Cir. 2000)). There is no question, however, that courts are permitted to review such decisions to determine if they were made in accordance with applicable regulations and procedures. *Id.* (stating that "military decisions that do not comport with statutory, regulatory or procedural strictures, including those concerning promotions, are reviewable"). Indeed, the Federal Circuit has stated explicitly that "[a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Further, when a procedural violation is found to have occurred, the court may set aside an involuntary discharge and order reinstatement. *Barnes*, 66 Fed. Cl. at 501.

Here, despite the government's protestations to the contrary, the court finds no legal support for the contention that Major Millican's claim is beyond the reach of a district court. Plaintiff complains that his name was removed from the Fiscal Year 2000 Lieutenant Colonel promotion list outside of the time allotted by statute, and so, there is no question that his claim is focused on procedure rather than the

merits of the President's decision.[12] Further, it is true that § 14502(g-h) limits the ability of all courts to review military promotion decisions. However, by their own terms, those subsections apply to claims based on an officer or former officer's failure "to be selected for promotion *by a selection board*." 10 U.S.C. §14502(g)(1) (emphasis added). The record here is clear that in June 1999, Major Millican was, in fact, selected for promotion by the Air Force Reserve's selection board. His request for review is directed not at any purported failure to be selected by the board, but instead, at the President's April 2002 decision to remove his name from the Fiscal Year 2000 Lieutenant Colonel promotion list. The claim does not, therefore, fall within § 14502(g)'s jurisdictional restriction. *See and compare Barnes*, 66 Fed. Cl. at 507 (interpreting similarly worded companion statute which addresses judicial review of claims by active duty members of armed forces, and holding that it did not apply to a claim challenging removal of the plaintiff's name from a promotion list).

Similarly, subsection (g) of the statute addresses the referral of promotion disputes to an SSB following a failure to be selected for promotion by a selection board. 10 U.S.C. § 14502(g)(1)(A). It is silent on the use of such a referral following removal of one's name from a military promotion list. In this case, because plaintiff *was* chosen for promotion, it would defy common sense to penalize him for a lack of review by an SSB. *See Barnes*, 66 Fed. Cl. at 507 (considering the plaintiff's claim that he was selected for promotion by the board but his name was then improperly removed from the promotion list and stating that "[t]here exists no basis upon which an SSB could reconsider the previous selection board action when no defect in the Board's action is involved"). Moreover, a careful reading of the statute reveals that the onus to refer matters to an SSB falls not on the plaintiff, but upon the Secretary. *See* 10 U.S.C. § 14502(g)(1)(A)

---

[12]/ Major Millican's proposed amended complaint pleads in the alternative. Plaintiff repeats his initial request to be promoted "by operation of law," in addition to requesting only the narrow review which is permissible here. *See Barnes*, 66 Fed. Cl. at 503. That approach is questionable, given plaintiff's representations in the briefing that he understands, and will abide by the limits on judicial review of military promotions. The court is persuaded, however, that this imprecise drafting does not taint otherwise valid claims. *See and compare McCann v. United States*, 12 Cl. Ct. 286, 288-89 (1987) (explaining that "[p]laintiff's claim that the defendant deprived him of administrative due process and, as a result, wrongfully discharged him should not be dismissed because parts of his claim for relief may be improper," given the plaintiff's willingness to amend his complaint and his representation that he would only pursue claims within the district court's jurisdiction).

(stating that no jurisdiction exists unless the "claim has been referred to a special selection board *by the Secretary* . . . .") (emphasis added). The court agrees with plaintiff that he cannot be denied review of the April 2002 decision simply because he did not request that his case be presented to an SSB. For these reasons, the President's decision to remove Major Millican's name from the Fiscal Year 2000 Lieutenant Colonel promotion list appears to be completely outside the purview of § 14502. Even if it is not, however, it is clear that a district court may review, at minimum, the Air Force's decision not to refer the removal matter to an SSB, pursuant to subsection (h) of the statute.[13]

In addition, the court notes that *Scott v. England*, 264 F. Supp. 2d 5 (D.D.C. 2002), on which defendant relies in support of its argument, is easily distinguished from the facts presented here. In *Scott*, the plaintiff sued in a federal district court to challenge the Navy's refusal to promote him and simultaneously initiated proceedings before the Board for Correction of Naval Records. 264 F. Supp. 2d at 6-7. Later, on the parties' agreed motion, the court held that the plaintiff had not exhausted his administrative remedies before the board, and it dismissed the plaintiff's lawsuit without prejudice pending the outcome of that proceeding. *Id.* at 8-9; *see also Juffer v. Caldera*, 138 F. Supp. 2d 22 (D.D.C. 2001). Here, in contrast, there is no question that Major Millican has exhausted his remedies before the AFBCMR, and has received a final, unfavorable decision from that body. The holding of *Scott*, then, has no bearing on a court's jurisdiction in this case. For these reasons, the court rejects defendant's contention that Major Millican's claim regarding a procedurally defective removal of his name from the Fiscal Year 2000 Lieutenant Colonel promotion list is beyond the reach of a district court.

Based upon the foregoing, this court concludes that each of Major Millican's claims could have been filed initially in a federal district court, for review under the APA. That fact weighs heavily in favor of granting plaintiff's motion to transfer this lawsuit to such a court. *Gray*, 69 Fed. Cl. at 98. And the court agrees

---

[13]/ A challenge to the Air Force's October 2002 decision not to select plaintiff for promotion does appear to be barred from judicial review, except to the extent that a court may review the selection board's decision not to convene an SSB to review that matter. *See* 10 U.S.C. § 14502(h). The amended complaint is unclear regarding whether Major Millican indeed intends to pursue such a claim. That issue will be subject to further consideration by a district court.

with plaintiff that a transfer would be in the interest of justice, as it would avoid unnecessary additional filing costs and undue delay. *Id.* It is clear from this very opinion that the issue of jurisdiction in military records correction cases is complex and unclear; thus, it would be inappropriate to penalize Major Millican for his understandable confusion in this area. Because plaintiff has requested transfer of this suit to the United States District Court for the District of Columbia, and defendant has raised no specific objection to that request, this matter shall be transferred to that forum.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion for Leave to Amend Complaint, filed May 2, 2006, is **GRANTED**;

(2) Defendant's Motion to Dismiss, filed March 13, 2006, is **DENIED** as moot;

(3) Plaintiff's Motion to Transfer, filed March 29, 2006, is **GRANTED**, and the Clerk's office is directed to **TRANSFER** this lawsuit to the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1631; and

(4) Each party shall bear its own costs.

s/Lynn J. Bush
Lynn J. Bush
Judge